**DENLEA & CARTON LLP**
James R. Denlea (pro hac vice pending)
jdenlea@denleacarton.com
Jeffrey I. Carton (pro hac vice pending)
jcarton@denleacarton.com
Catherine H. Friesen (pro hac vice pending)
cfriesen@denleacarton.com
Amber T. Wallace (pro hac vice pending)
awallace@denleacarton.com
2 Westchester Park Drive, Suite 410
White Plains, New York 10604
Tel.: (914) 331-0100
Fax: (914) 331-0105

*Counsel for Plaintiff*

**KUZYK LAW, LLP**
Michael D. Braun (SBN 167416)
*mdb@kuzykclassactions.com*
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone: (213) 401-4100
Facsimile:(213) 401-0311

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SIMONE GEORGES, on behalf of herself and all others similarly situated,**<br><br>**Plaintiff,**<br><br>v.<br><br>**FOODSCIENCE LLC D/B/A VETRISCIENCE LABORATORIES,**<br><br>**Defendant.** | **CASE NO.:**<br><br>**CLASS ACTION COMPLAINT**<br><br>(1) **Violations of California's Unfair Competition Law (Bus. & Prof. Code §§ 17200 *et seq.*)**<br>(2) **Violations of California's False Advertising Law (Civ. Code §§ 17500 *et seq.*)**<br>(3) **Violations of California's Consumer Legal Remedies Act (Civ. Code §§ 1750 *et seq.*)**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

# INTRODUCTION

1.     Plaintiff Simone Georges ("Plaintiff") brings this action for herself and on behalf of all others in California who purchased products in the GlycoFlex® line of canine joint support supplements (the "Products") created, manufactured, marketed, and/or sold by FoodScience LLC d/b/a VetriScience Laboratories ("VetriScience" or "Defendant").  A complete list of the Products is attached hereto as **Exhibit 1**.

2.     This action seeks to redress the false, misleading, and deceptive advertising and packaging claims that VetriScience has made in connection with the sale of its GlycoFlex® line of canine joint support supplements in allegedly varying strengths that purport to be "clinically proven" or "clinically tested" to improve joint and hip health in dogs and, specifically, to provide "up to 41% increase in hind leg strength in just 4 weeks" (the "Clinically Proven Claim").[1]

3.     VetriScience's bold claim to have a clinical study proving that its GlycoFlex line of  supplements will improve joint and hip health and increase hind leg strength is false.  VetriScience has never clinically tested any of its GlycoFlex

---

[1]     In 2024, following the filing of a lawsuit, the GlycoFlex line of canine joint supports was renamed "Healthy Hip & Joint," although customers are told it is a "new look, same trusted formula." (see e.g., https://www.vetriscience.com/glycoflex-174-plus-under-30-lbs.html, last accessed April 1, 2025). The products all have the same core of ingredients in varying strengths: GlycoFlex Plus (which has recently been renamed "Ultimate Strength Healthy Hip & Joint") contains 1,000 mg of Glucosamine, 600 mg of Perna canaliculus, and 1000 mg of Methylsulfonylmethane, among other ingredients.  GlycoFlex 3 (which was renamed "Extra Strength Healthy Hip and Joint") also contains 1,000 mg of Glucosamine, 600 mg of Perna canaliculus, and 1000 mg of Methylsulfonylmethane, among other ingredients.  GlycoFlex 2 (which was sometimes marketed under the name "GlycoFlex Sport" and is now marketed as "Healthy Hip and Joint") contains 750 mg of Glucosamine, 600 mg of Perna canaliculus and 500 mg of Methylsulfonylmethane, among other ingredients).  VetriScience also previously marketed a blue-packaged "GlycoFlex 1" or "GlycoFlex Everyday" containing 600 mg of Perna canaliculus and 500 mg of  Glucosamine, but it is unclear if it still available. "Small dog" formulations of GlycoFlex Plus and GlycoFlex 3 (with reduced strength ingredients) are also available.  The new packaging is only being phased in gradually, and as discussed *infra*, customers who place an order today may receive the old or new packaging.

supplements.  Instead, only one product - GlycoFlex III (marketed as "GlycoFlex 3") -- has been examined at all, and then only in a self-described "pilot study" in 2006 (the "2006 Pilot Study").  The 2006 Pilot Study involved only seven dogs which had been subjected to an artificial, surgical and chemically induced "stable stifle OA [osteoarthritis] model,"[2] meaning the dogs were made lame as if they suffered from osteoarthritis and then administered the GlycoFlex III supplement.  The pilot study observed that only 3 of the 7 dogs "had a significant improvement in lameness" and an average 41% increase in hind leg strength, meaning 4 of the 7 dogs had no significant increase in hind leg strength.  Thus, VetriScience's Clinically Proven Claim in its packaging and marketing materials is demonstrably false because there was no clinical study, VetriScience misrepresents what the small pilot study found, and actively conceals the fact that even the 2006 Pilot Study only studied GlycoFlex III's effect on osteoarthritis, not all canine joint issues.

4.      It is clear that VetriScience never believed its own Clinically Proven Claim.  It waited approximately eight years after the 2006 Pilot Study to timidly claim in 2014 that GlycoFlex was "clinically researched." Over time, however, VetriScience threw all caution to the wind and boldly claimed that the 2006 Pilot Study clinically proved that GlycoFlex products were an effective treatment for all canine joint issues. Obviously, if VetriScience believed that claim, it would have made it soon after the 2006 Pilot Study.

5.      Notwithstanding that the GlycoFlex line of products has not been clinically studied, let alone "Clinically Proven," VetriScience falsely advertises and markets GlycoFlex Plus and GlycoFlex III/GlycoFlex 3 as "Clinically Proven" on various online retailers, such as Amazon.com and Walmart.com, and on social media

---

[2]      A dog's "stifle" is equivalent to a human knee.

platforms, such as TikTok, and includes the "Clinically Proven" misrepresentation on the GlycoFlex Plus product label.

6.    As the National Advertising Division of BBB National Programs (the "NAD")[3] has repeatedly stated, representations that a product's efficacy has been "clinically proven" must closely match the underlying evidence because they are a promise that there is scientific evidence that establishes the truth of the claim.  Such a claim conveys an especially strong message to consumers.

7.    Given the size of the market for pet supplements the United States — estimated at $1.6 billion in 2020 with an estimated annual growth rate of 8.2% by 2028 — and the hundreds of competing products, there is pneumatic pressure on those competitors to differentiate their products and convince consumers that their products can help their pets live a healthy life.

8.    By this action, Plaintiff seeks to redress VetriScience's unfair and deceptive marketing campaign built upon the misleading claims that it makes about the GlycoFlex line of products, and to obtain the financial recompense to which Plaintiff and her fellow class members are entitled.

---

[3]    The NAD is an independent system of self-regulation established by the advertising industry in 1971 and designed to build consumer trust in advertising.  It reviews national advertising in all media in response to third-party challenges or through inquiries opened on its own initiative.  The NAD's decisions set consistent standards for advertising truth and accuracy, delivering meaningful protection to consumers and leveling the playing field for business.  An advertiser's failure to participate in the NAD's review of its advertising and/or failure to comply with the NAD's recommendations and decision results in the matter being referred to the appropriate regulatory agency, which is typically the Federal Trade Commission.  NAD referrals receive priority treatment from the Federal Trade Commission.

# THE PARTIES

## Plaintiff Simone Georges

9.      Plaintiff Simone Georges is an individual who resides in Encino, California.

10.      Over the last year, Plaintiff Simone Georges has purchased GlycoFlex 3 on multiple occasions from Amazon.com for her two dogs, one of whom has joint problems.

11.      Prior to purchasing GlycoFlex 3, Ms. Georges was exposed to, and relied on, VetriScience's representation in its marketing on Amazon.com that GlycoFlex 3 is a "clinically proven" canine joint supplement.

12.      Ms. Georges purchased GlycoFlex 3 supplements reasonably believing that they were clinically proven to improve joint health in dogs.

13.      Ms. Georges has not noticed any improvement in her dogs' joint health, and she has stopped buying GlycoFlex 3.

14.      Had Ms. Georges known that GlycoFlex 3 was not clinically proven as a joint supplement or that it has only been preliminarily studied for osteoarthritis, she would not have purchased it.  At the very least, Ms. Georges would not have paid the exorbitant price premium charged for GlycoFlex 3 supplements that purported to be clinically proven to help with all joint issues in dogs.

15.      Ms. Georges could have purchased an equivalent and less expensive glucosamine/chondroitin-based joint support supplement for dogs, such as Nutramax Cosequin Joint Health Supplement, at half the price of GlycoFlex Plus and/or any number of pure Green Lipped Mussel supplements at a fraction of the cost of

GlycoFlex Plus even if combined with a much cheaper glucosamine/chondroitin-based joint support supplement.

16.     Plaintiff continues to desire to purchase canine joint supplements including those marketed and sold by Defendant.  If the Products were clinically proven to improve joint health, or if the advertising, packaging and marketing was reformulated to provide non-misleading information, Plaintiff would likely purchase the Products again in the future.  Plaintiff regularly visits websites where the Products and other canine joint supplements are sold.  At present Plaintiff cannot rely on the accuracy of Defendant's labels and advertising for the entire line of Products, which Plaintiff is also interested in purchasing with labeling and advertising that is not false or misleading.  Should Defendant begin to market and sell a new line of products, Plaintiff could also be at risk for buying another one of Defendant's products in reliance on the same or similar misrepresentation and omissions.  And because of Defendant's unlawful and misleading labels on its Products, Plaintiff cannot make informed choices between the canine joint supplement offered by Defendant and other canine joint supplements offered by other manufacturers, such as choices based on price and proven efficacy.

**Defendant Food Science LLC d/b/a VetriScience Laboratories**

17.     Defendant FoodScience LLC d/b/a VetriScience Laboratories is a Delaware limited liability company with its principal place of business in Williston, Vermont.

18.     Upon information and belief, VetriScience is a division of FoodScience LLC ("FoodScience").  Food Science LLC is owned by FoodScience Parent Holdings LLC, also a  Delaware limited liability company.  Food Science Parent Holdings LLC is owned by Morgan Stanley Capital Partners, a limited partnership organized under the laws of Delaware with a principal place of business in New York.

19.     Defendant manufactures, markets, and sells the VetriScience's GlycoFlex® line of supplements through its own VetriScience.com website, Amazon, Chewy, Target, Healthy Pets, Petco, Walmart and hundreds of other online and brick and mortar pet stores and veterinarians.[4]

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because (1) the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, and (2) the named Plaintiff and Defendant are citizens of different states.  28 U.S.C. § 1332(d)(2)(A).

21.     The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as the parties are diverse and the amount in controversy exceeds the requisite threshold.

22.     This Court may exercise jurisdiction over VetriScience because VetriScience has sufficient minimum contacts in California and purposely avails itself of the markets within California through the promotion, sale, marketing, and distribution of its products, thus rendering jurisdiction by this Court proper and necessary.

23.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred within this judicial district and because VetriScience has marketed and sold the products at issue in this action within this judicial district and has done business within this judicial district.

---

[4]     https://www.vetriscience.com/ways-to-buy (last accessed March 27, 2025)

Defendant is doing business in Los Angeles County and Plaintiff purchased GlycoFlex products in Los Angeles County.

24.     In accordance with California Civil Code Section 1780(d), Plaintiff concurrently files herewith a declaration establishing that she purchased *GlycoFlex 3* in Los Angeles County. (Attached hereto as **Exhibit 2**.)

## **FACTUAL BACKGROUND**

I.     **Due to the Premium Consumers are Willing to Pay for Products that are Backed by Science, Manufacturers Routinely Misrepresent That Their Products Have Been Scientifically Proven to be Effective**

25.     Consumers who are seeking help to treat and minimize their dogs' joint problems are particularly vulnerable targets for unscrupulous manufacturers and advertisers.  Most dog owners treat their pets as their children (or better), and dog owners are willing to pay a premium for joint support supplements that are scientifically proven to be effective.  In an overcrowded marketplace where beneficial joint health claims for dogs are ubiquitous, being able to convince the consuming public about the efficacy of such products is critical.

26.     In order to differentiate their products and gain a competitive edge, manufacturers and advertisers routinely mislead consumers by claiming that the efficacy of their products is backed by science (*i.e.*, "establishment claims"), when, in fact, it is not.  That is why Courts are particularly wary of claims by manufacturers that their product has been scientifically proven to be effective when, as here, those claims are false.

27.     An advertiser's health-related claims about the efficacy of a product must "be supported with 'competent and reliable scientific evidence,'" which the Federal Trade Commission (the "FTC") defines as "'tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that have been

conducted and evaluated in an objective manner by persons qualified to do so, using procedures generally accepted in the profession to yield accurate and reliable results.'"[5] As the FTC has stated, well-controlled clinical studies are the most reliable form of evidence.[6]

## II.    VetriScience's 2006 Pilot Study Does Not "Clinically Prove" Anything and Its Ubiquitous Clinically Proven Claim is False

28.    Throughout VetriScience's marketing of GlycoFlex products in the last several years, it claims that the products are "clinically proven" to support canine joint health generally and, more specifically in some marketing, that they have been proven to increase hind leg strength by 41%.  The Clinically Proven Claim is sometimes (but not always) accompanied by a tiny asterisk.  For example, on the GlycoFlex Plus's packaging, the Clinically Proven Claim is followed by a tiny double asterisk:



On the back of the packaging there is an equally miniscule double asterisk with what appears to be a citation to a clinical study:

---

[5]      FTC, Dietary Supplements: An Advertising Guide to Industry, Section II(B), at https://www.ftc.gov/tips-advice/business-center/guidance/dietary-supplements-advertising-guide-industry

[6]      FTC, Dietary Supplements: An Advertising Guide to Industry, Section II(B)(2), at https://www.ftc.gov/tips-advice/business-center/guidance/dietary-supplements-advertising-guide-industry

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

There is a citation to "Washington State University Study: The effects of GlycoFlex Plus®3 on stable stifle OA model in dogs." A Google search of that text leads to a copy of the 2006 Pilot Study buried on the VetriScience website[7].

29.    References to a "Washington State University Study" also appear in Defendant's marketing materials for GlycoFlex 3. For example, the Defendant is currently advertising GlycoFlex 3 for sale on Walmart.com with the claim that it is "clinically proven joint support" and "Clinically Proven to increase hind leg strength by 41%."[8] Another tiny asterisk (barely visible) leads to a citation to the "Washington State University Study: The effects of GlycoFlex Plus®3 on stable stifle OA model in dogs."



---

7     2006 Pilot Study available here:  https://info.vetriscience.com/white_papers/VSL%20120.pdf

8     https://www.walmart.com/ip/VETRISCIENCE-Glycoflex-3-Dog-Hip-and-Joint-Supplement-with-Glucosamine-Chicken-60-Chews/2968065308?classType=REGULAR&from=/search (accessed March 27, 2025).

30.    The full title of the 2006 Pilot Study is: Martinez, S., et al.  *The Effect of Glyco-Flex® III of a Stable Stifle Osteoarthritis Model in Dogs:  A Pilot Study*. Washington State University, 2006.  The title of the study obviously admits that it is a pilot study, not a clinical study, and omitting the "A Pilot Study" from its reference in the marketing of GlycoFlex Plus is materially misleading in and of itself.  A pilot study cannot be used to claim it proves anything.  As the National Institutes of Health ("NIH") has cautioned:

> We routinely see specific aims for feasibility pilot studies that propose to evaluate "preliminary efficacy" of intervention A for condition X. However, there are two primary reasons why pilot studies cannot be used for this purpose. First, at the time a pilot study is conducted, there is a limited state of knowledge about the best methods to implement the intervention in the patient population under study. Therefore, conclusions about whether the intervention "works" are premature because you don't yet know whether you implemented it correctly. Second, due to the smaller sample sizes used in pilot studies, they are not powered to answer questions about efficacy. Thus, any estimated effect size is uninterpretable—you do not know whether the "preliminary test" has returned a true result, a false positive result, or a false negative result.[9]

31.    The 2006 Pilot Study itself demonstrates its preposterously limited scope. After artificially inducing the physical characteristics of osteoarthritis in ***eight*** dogs, only three of seven remaining in the study showed a significant increase in hind leg strength.[10]  Of those three dogs, the average improvement in hind leg strength was

---

[9]    https://www.nccih.nih.gov/grants/pilot-studies-common-uses-and-misuses

[10]    Sadly, one dog became so lame from the surgical and chemical inducement of osteoarthritis that it could not participate in the "study."  It is notable that VetriScience misrepresents the manner of its testing on animals, a misrepresentation which reflects its mendacity with respect to its false Clinically Proven Claim.  In the "FAQs" section of VetriScience's website, it falsely claims the following:

1   41% plus or minus 10%.  No reputable researcher would claim that a positive result in

2   only three of seven animals indicates anything about the efficacy of the treatment,

3   much less that it proves an efficacy claim.  Even the author of the 2006 Pilot Study

4   obliquely admits to its limited scope:

5   **Clinical Relevance:**  The results of the study suggest that Glyco-Flex® III may be an effective non-
    pharmaceutical treatment that can reverse the clinical signs of OA in dogs.  Future studies are needed
6   and should include larger animal numbers and pharmacokinetic analysis of Glyco-Flex® III to
    investigate the responder-nonresponder phenomenon.

7

8       32.     In any event, VetriScience's ubiquitous Clinically Proven Claim is

9   patently false.  Moreover, VetriScience implicitly admits that it had no basis for

10  making the Clinically Proven Claim because it did not make that claim until

11  approximately twelve years after the 2006 Pilot Study was authored.  Indeed, it did not

12  rely on the 2006 Pilot Study until approximately 2014 when it began to timidly claim

13  that GlycoFlex Plus was merely "clinically researched" and that the 2006 Pilot Study

14  concluded that GlycoFlex Plus "may help normalize joint function in dogs with joints

15

16

17

18  

19  

20

21

22  That was obviously untrue in connection with the 2006 Pilot Study that states that it used "purpose
    bred hound cross dogs" in its study that artificially induced lameness in otherwise healthy dogs.
23  According the Humane Society:. "The majority of dogs in laboratories are purpose-bred, meaning
    that they are bred with the intent of selling them to laboratories that use dogs in harmful
24  experiments." https://www.humanesociety.org/resources/dogs-used-research-and-testing-
    faq#:~:text=The%20majority%20of%20dogs%20in,use%20dogs%20in%20harmful%20experiments
25  .  And yet VetriScience has relied on the cruel 2006 Pilot Study for a decade while falsely claiming
    that it only studies its products (humanely) on actually sick dogs whose owner and vets voluntarily
26  enroll.  While this action does not seek redress for the cruelty of the 2006 Pilot Study or
    VetriScience's misrepresentation of its animal treatment protocols, that wrongdoing reflects
27  VetriScience's overall attitude that marketing and sales trump the truth and the humane treatment of
    animals.
28

affected by OA."[11]  Over the next few years, however, VetriScience gradually threw all caution and honesty to the wind and began making the Clinically Proven Claim based on the 2006 Pilot Study, including extending the Clinically Proven Claim to all "joint support" and joint function generally, not just osteoarthritis which was the sole subject of the 2006 Pilot Study.  Obviously, VetriScience knew for twelve years that it could not make the Clinically Proven Claim, but nonetheless chose, prior to the Class Period, to mislead consumers with its Clinically Proven Claim to sell more products.

### III.    VetriScience Falsely Marketed the GlycoFlex Line of Products as Supplements Clinically Proven to Alleviate All Joint Problems, Not Just Osteoarthritis.

33.    VetriScience continues to market its complete line of GlycoFlex Products as Clinically Proven, clinically tested, and clinically researched based on the same 2006 Pilot Study.  For example, a marketing brochure currently linked on its website states that "Glyco FLEX® contains a unique combination of GlycOmega™ (Perna canaliculus from an exclusive New Zealand source) plus DMG, glucosamine, MSM, and other active ingredients that have been proven beneficial for dogs and cats requiring joint support. Glyco FLEX® is a clinically researched, Perna-based joint support product."[12]  The same brochure cites the 2006 Pilot Study as its supporting "clinical research."

---

[11] https://web.archive.org/web/20140729093554/http://www.vetriscience.com/index.php?l=page_view&p=glyco_flex (last accessed April 1, 2025)

[12]    https://info.vetriscience.com/white_papers/VSD58%20MarketingBro.pdf  (last accessed March 28, 2025)

1
2
3
4
5
6
7
8
9
10
11
12
13



14    34.    The false Clinically Proven Claim is used to market the GlycoFlex line of
15    products for all kinds of joint problems, not just osteoarthritis.  That marketing is
16    particularly false and misleading because the only study that VetriScience relies on,
17    the 2006 Pilot Study, only purported to study GlycoFlex III's efficacy in treating
18    osteoarthritis.  Osteoarthritis is not, however, the only joint problems a dog can suffer
19    from[13] and osteoarthritis is not even the most common joint problem, which are
20    cranial cruciate ligament issues.[14]  GlycoFlex nonetheless applies the Clinically
21    Proven Claim to all canine joint problems.

22
23

24    [13]    Merck Veterinary Manual, *Other Joint Disorders in Dogs*.  Available at
25    https://www.merckvetmanual.com/dog-owners/bone-joint-and-muscle-disorders-of-dogs/other-joint-disorders-in-dogs

26

27    [14]    https://www.guilfordjamestownvet.com/site/blog-greensboro-vet/2021/11/15/signs-of-dog-joint-pain.
28

35.    For example, as depicted above, the packaging of GlycoFlex Plus touts its Clinically Proven Claim as "canine joint support" without qualification on the front and back of the package.  In addition, on the back of the package the "PRODUCT DETAILS" purports to describe what benefits GlycoFlex Plus provides:

> GlycoFlex® Plus is a delicious bacon-flavored chew, recommended for dogs of all ages needing advanced joint support. This clinically proven formula helps cushion joints, promotes cartilage building and alleviates discomfort caused by normal daily activities.

Nowhere on the packaging does GlycoFlex Plus indicate that it was only studied as a supplement to treat osteoarthritis.

36.    In fact, it is clear that VetriScience wants to hide the fact that GlycoFlex was studied for osteoarthritis only wherever it cites the Pilot Study.  First, any references on the packaging and on advertisements (such as the Walmart advertisement depicted above) to the so-called clinical study — the 2006 Pilot Study — appear in a miniscule, almost unreadable type.  Second, VetriScience misleadingly changes the title of the 2006 Pilot Study from "The Effect of Glyco-Flex III on a Stable Stifle Osteoarthritis Model in Dogs: A Pilot Study" to "The effects of GlycoFlex 3 on a stable stifle OA model in dogs."  That change not only hides the fact that it was a pilot study, it conceals the object of the study by referring to "OA" instead of the word "osteoarthritis."  No dog owner glancing at either the packaging or at website advertisements is likely to even see the reference to the 2006 Pilot Study much less make the connection that GlycoFlex Plus was studied only for osteoarthritis, particularly if the consumer's dog suffers from joint problems other than osteoarthritis.  There is no explanation for that marketing choice other than intentional obfuscation and increased sales to a broader market of dog owners.

1    37.    Until very recently, VetriScience has consistently marketed its GlycoFlex

2 line of products on its website as Clinically Proven to support all forms of joint issues.

3 The images below depict misrepresentations about GlycoFlex supplements that

4 appeared on VetriScience's website and were captured in 2024 by the Wayback

5 Machine.[15],[16],[17]

6

7

8 

9 **GlycoFlex® is Clinically Proven Joint Support for Pets**

10 As many as 20% of dogs in North America over the age of one suffer from joint problems, according to a 2020 study.1 While many pet parents may think that joint discomfort is only a concern for senior dogs and cats, joint inflammation and degeneration associated with aging can start much earlier than you may think.

11

12 Adding a quality joint support supplement to your pet's diet can not only support mobility and strength, it may help with joint discomfort associated with aging.

13 GlycoFlex® Plus combines glucosamine, chondroitin, green-lipped mussel, DMG, MSM, and important antioxidants to support your pet's mobility and comfort. It's an advanced joint support supplement for dogs and cats of any age.

14

15

16

17

18

19

20

21

22

23    [15]    https://web.archive.org/web/20240422060953/https://www.vetriscience.com/glycoflex-174-
24 plus-hip-joint-supplement-for-dogs-chew-duck-flavor-60-count.html (captured on April 22, 2024;
last accessed April 1, 2025)

25
     [16]    https://web.archive.org/web/20240521042226/https://www.vetriscience.com/our-pet-promise
26 (captured on May 21, 2024; last accessed April 1, 2025)

27    [17]    https://web.archive.org/web/20240825012324/https://www.vetriscience.com/the-glycoflex-
28 difference (captured in August 25, 2024; last accessed on April 1, 2025)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



## Backed by Science

VetriScience® uses well-researched ingredients in products that have
beneficial levels of active ingredients. Through studies and scientific research,
VetriScience® has developed many products and formulas that are clinically
proven to improve pet's dental health, reduce stress, and increase hind leg
strength.

- Clinical studies on GlycoFlex®, Perio Support and Composure™
- Researched ingredients
- Beneficial combinations and levels of active ingredients

**Does GlycoFlex® Plus actually work for dogs?**
Not only do we have thousands of happy customers who love using GlycoFlex® for their dogs, GlycoFlex® Plus is clinically proven to increase hind leg strength by up
to 41% in just four weeks!* This is our strongest formula for medium and large dogs, made with green-lipped mussel, glucosamine, and chondroitin. Try tasty chews
with delicious flavors like Peanut Butter, Duck, and Bacon!

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

38.     VetriScience has also repeated this false Clinically Proven claim on social media platforms, such as TikTok.[18]



39.     Recognizing that its consumer deception might attract class action lawsuits, VetriScience has recently changed its packaging and website marketing to "tone down" its claims, but it still misleads consumers about its 2006 Pilot Study.  For example, while the packaging of GlycoFlex Plus formerly claimed that it is "Clinically Proven," the new packaging for the same product marketed under the name "Ultimate Healthy Hip & Joint" claims it is "clinically tested."[19]  That new packaging is only being phased in gradually: As depicted below, the webpage currently displays a picture of the previous packaging (with the "Clinically Proven"

---

[18]    https://www.tiktok.com/@vetriscience/video/7266033639572376875
[19]    https://www.vetriscience.com/glycoflex-174-plus-under-30-lbs.html (last accessed March 28, 2025)

claim) connected by arrow to the new package with the equally misleading "clinically tested" claim, and states "you may receive old or new packaging."  As shown below, the new packaging also includes the misleading claim (from the Pilot Study without referencing it all) that it is "clinically tested to improve strength and mobility up to 41% within four weeks."



40.    VetriScience has also adopted the "clinically tested" language on its website as well.  The advertisement immediately below currently appears on its website.[20]



41.    Despite these half-hearted (and equally deceptive) attempts to tone down its rhetoric, VetriScience continues <u>even today</u> to aggressively advertise its regular and "small dog" formulations of GlycoFlex 2, GlycoFlex III and GlycoFlex Plus as a

---

[20]    https://www.vetriscience.com/joint-health.html (last accessed April 1, 2025)

1  "clinically proven mobility and joint supplement" on Amazon.com[21,22, 23,24] and on the

2  websites of other online retailers, such as Walmart (depicted above in paragraph 25),

3  PetSmart,[25] and Chewy.com.[26]

4

5

---

6  [21]  https://www.amazon.com/VETRISCIENCE-Glycoflex-Clinically-Supplement-
Glucosamine/dp/B0015CV880/ref=sr_1_5?crid=HSET1RVAVMM8&dib=eyJ2IjoiMSJ9.e42_UHru
7  7P2gooStEXM942tcHFJJ9gOdrrgvDIfcfeuPLxOu7MTOSP373UTTKvPjjljna2t8W6RfFSogi04h10j
8  80MbLCmpwO-
Dsy6c13FkmNNYaOfqoCeq2pjq7l0xhdOQm3bOlDFgVcGmxn7A5fceRdTGXMrECTcMsdrz436E
9  cQ91Y-
6nCDOozPYroXCLOq3PuAGbSTLyCnQh3JskmBaw22Yny42SPpOi8FT6WiZEBw6mZj2OPimT
10  Y_29VjGiS7lvW-P9LdUau6qdxg6BDOUBqV-22R74vYmIAFwjBIibiBcV5JkNfB0Yv1SctBO-
CabVWrllp2NLwZWJo1Jp1t-vQEFCIJthZnljv9rARXPVGK43gBDjvLOuIo1ryZmh-
11  iRyccyT9aozlKTAHPbzAiQKJO-
xAioTQOMtgh3ZcARMsgugkvX5GRr91SKD06vQg.YcuKTAXhg5joZGH3F84Oq6jpbGEMDwG
12  G2zVbM2o1610&dib_tag=se&keywords=glycoflex&qid=1742334608&sprefix=glycoflex%2Caps
13  %2C80&sr=8-5&th=1 (accessed March 27, 2025)

14  [22]  https://www.amazon.com/VetriScience-GlycoFlex-Plus-Support-Supplements-Supplement-
Glucosamine/dp/B0116E4DVU?ref_=ast_sto_dp&th=1 (accessed March 27, 2025)
15

16  [23]  https://www.amazon.com/VetriScience-Glycoflex-Clinically-Proven-
Supplement/dp/B00ABGSX9I/ref=sr_1_5?crid=330WLSQ762U07&dib=eyJ2IjoiMSJ9.aQS6MgST
17  _SCgFmyjLQ4qqkXcjUmpF84cWzmu0-
STSolc2D17mMaz7d8DbwNxqebbFcwBubw6zuL0Po9cTkDH5teowV9GzOm6Y9fFiyaQgNC4stw
18  56N9_z5JwqqQ3aVVnxqxcpUQIHMlLys_ELGiuYhN_ob8XkHUzqGXBEeZqcKZ8YHajqcA8P5L
zE-
19  RfhlwWu3j7HX5lJ7QrL0mP1aUH78UlflhP2tl0KIDYRIr7WREiv2rEe1XKzR4mo8CXL8l9wLT3cl
20  3SR7-
sSIIXSqKPGYa1lVvLjXOvhfMwK2pzxt1rzqfqFAw2UYXX1l4Pu5aawH4OZulstxKKwMZzMqXS
21  0DG58l9P3SbbAYgeT3tDT8M.Ap4pcKLQRYYrssDHP5nLFGxPLU5Ff6w9DQulnvS5pnM&dib_t
ag=se&keywords=GlycoFlex+3&qid=1743527796&s=pet-
22  supplies&sprefix=glycoflex+3%2Cpets%2C57&sr=1-5 (last accessed April 1, 2025)

23  [24]  https://www.amazon.com/Glycoflex-Supplement-Active-Clinically-
Proven/dp/B0CCHNY5TN/ref=sr_1_9?crid=330WLSQ762U07&dib=eyJ2IjoiMSJ9.aQS6MgST_S
24  CgFmyjLQ4qqkXcjUmpF84cWzmu0-
STSolc2D17mMaz7d8DbwNxqebbFcwBubw6zuL0Po9cTkDH5teowV9GzOm6Y9fFiyaQgNC4stw
25  56N9_z5JwqqQ3aVVnxqxcpUQIHMlLys_ELGiuYhN_ob8XkHUzqGXBEeZqcKZ8YHajqcA8P5L
zE-
26  RfhlwWu3j7HX5lJ7QrL0mP1aUH78UlflhP2tl0KIDYRIr7WREiv2rEe1XKzR4mo8CXL8l9wLT3cl
27  3SR7-
sSIIXSqKPGYa1lVvLjXOvhfMwK2pzxt1rzqfqFAw2UYXX1l4Pu5aawH4OZulstxKKwMZzMqXS
28  0DG58l9P3SbbAYgeT3tDT8M.Ap4pcKLQRYYrssDHP5nLFGxPLU5Ff6w9DQulnvS5pnM&dib_t

1

2

3

4

5

6

7

8

9

10

11





VetriScience Glycoflex 3 Vet Strength Glucosamine for Dogs Hip and Joint Supplement - Clinically Proven Mobility and Joint Supplement with MSM, DMG and Green Lipped Sea Mussel, Chicken, 60 Chews

Visit the VETRISCIENCE Store

4.5 ★★★★★ ⌄    13,038 ratings

Amazon's Choice    Overall Pick

**1K+ bought** in past month

-10% $17⁵⁹

One-Time Price: $19.55 ⓘ

Get **Fast, Free Shipping** with Amazon Prime

Get $50 off instantly: Pay $0.00 $17.59 upon approval for Amazon Visa. No annual fee.

Size: **60 Chews**

11

12

13

14

15

16

17

18

19

20

21

22

23    ag=se&keywords=GlycoFlex+3&qid=1743527796&s=pet-supplies&sprefix=glycoflex+3%2Cpets%2C57&sr=1-9 (last accessed A

24

25    [25] https://www.petsmart.com/dog/vitamins-and-supplements/hip-and-joint/vetriscience-glycoflex-plus-hip-and-joint-for-dog-45-ct-83199.html (accessed March 27, 2025)

26

27    [26]    https://www.chewy.com/vetriscience-glycoflex-3-chicken/dp/42640 (last accessed April 1, 2025)

28



VetriScience GlycoFlex Plus Hip and Joint Supplement for Small Dogs - Extra-Strength Joint Support Chews for Dogs Under 30 Pounds, with Green Lipped Mussel, Chondroitin, and Glucosamine for Dogs

Visit the VETRISCIENCE Store
4.5 ★★★★☆ ∨    4,047 ratings
Amazon's Choice
**700+ bought** in past month

**Big Spring Deal** on first delivery
-32% $17⁵⁵
List Price: $25.99 ⓘ

Get **Fast, Free Shipping** with Amazon Prime
Apply now and get a $80 Amazon Gift Card upon approval of the Amazon Store Card, or see if you pre-qualify with no impact to your credit bureau score.
Flavor Name: **Duck Flavor**

Roll over image to zoom in

3 VIDEOS



VetriScience Glycoflex 3 Clinically Proven Hip and Joint Supplement for Dogs - Maximum Strength Dog Supplement with Glucosamine, MSM, Green Lipped Mussel & DMG - 2 Pack (120 Chewable Tablets Each)

Visit the VETRISCIENCE Store
4.7 ★★★★★ ∨    279 ratings
**100+ bought** in past month

-19% $70⁴⁷
Typical price: $87.00 ⓘ

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

pplies › Dogs › Health Supplies › Hip & Joint Care



## Glycoflex 2 Hip and Joint Supplement for Active Dogs, 120 Chews & Glycoflex 3 Clinically Proven Hip and Joint Supplement for Dogs, 120 Chews

Visit the VETRISCIENCE Store

Bundle Was Price: $79.00 Details
Bundle Price: **$74.65**
You Save: $4.35 (6%)

Apply now and get a $80 Amazon Gift Card upon approval of the Amazon Store Card, or see if you pre-qualify with no impact to your credit bureau score.

- GLYCOFLEX 2 Canine represents Stage II of our comprehensive stage of life program for dogs needing moderate joint support
- Recommended for adult and maturing dogs,



## VetriScience GlycoFlex Plus Hip and Joint for Dog 45 Ct

VetriScience                                    Item #5354248

⭐⭐⭐⭐⯪ 71 reviews

### $23.99

or 4 interest-free payments of $6.00 with **S** Afterpay ⓘ

Quantity: 45 Count

🏷 $10 back in savings (5,000 points) when you spend $50+ on merchandise, services or donations! Details

🏷 Save $10 off $50+ with Free Same-Day Delivery  Details

Show more offers (3) ⌄

Hover over image to zoom in

## About this item

**Description**    Ingredients    Directions

**DESCRIPTION**
VetriScience GlycoFlex offers clinically proven dog hip and joint support. Our Pet's Sake Promise is our pledge - to always think of your pet as our own and provide them with the innovative supplements to help them feel their best.

---

24

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF



**About This Item**

**Details**                                                                                    —

- Veterinarian formulated ultimate strength joint support for small canines containing perna, glucosamine, MSM, DMG, and antioxidants for advanced joint support
- Specifically developed and balanced to meet the needs of small dogs throughout all life stages
- Great for active and competitive dogs to maintain top form or to provide support for dogs showing signs of aging and discomfort as well as those with limited mobility after orthopedic surgery
- Clinically proven to increase hind leg strength in 4 weeks
- Naturally chicken liver-flavored chews are easy to feed. Even the finickiest pup will enjoy this healthy treat

42.     Consumers are exposed to these advertising materials and to the front labels and front outer packaging of the Products where Defendant's "Clinically Proven" statement is prominently displayed and reasonably rely on those representations that the Product is clinically proven to improve joint health.

43.     As a result, consumers like Plaintiff are deceptively induced to purchase a Product that is not clinically proven to improve canine joint health, at a premium price.

44.     Consumers lack the meaningful ability to test or independently ascertain the truthfulness of Defendant's claims, especially at the point of sale. Reasonable consumers, when they look at the label of the Products and/or the advertising of the Products on websites, believe that the Products are "clinically proven." Reasonable consumers do not have in-depth knowledge of the clinical research process. An average consumer does not have the specialized knowledge necessary to determine whether a clinical study exists or not. The average consumer has no reason to suspect

that Defendant's representations about the Products on its labels or in its advertising are misleading or outright false.  Therefore, consumers had no reason to investigate whether the Products had actually been clinically studied and, if so, for what condition, and reasonably relied on Defendant's representations regarding the nature of the Products.

45.    Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled Plaintiff and similarly situated consumers.

46.    As a result of their reliance on Defendant's "clinically proven" claims, consumers have suffered an ascertainable loss of money, including, but not limited to, out of pocket costs incurred in purchasing the GlycoFlex line of Products.  Further, as a result of its deceptive marketing and unfair competition with other similar manufacturers and brands, Defendant realized sizable profits.

## CLASS DEFINITION AND ALLEGATIONS

### California Class

47.    Plaintiff Georges brings this lawsuit as a class action on behalf of herself and all others similarly situated as members of the proposed class pursuant to Federal Rule of Civil Procedure 23(a), and 23(b)(1), 23(b)(2), 23(b)(3), and 23(b)(4).

48.    All claims alleged herein arise under California law for which Plaintiff seeks relief authorized by California law.

49.    The class Plaintiff seeks to represent (the "Class") is defined as:

> All consumers who, within the applicable statute of limitations period, purchased in the State of California (whether online or in-person) the GlycoFlex® line of canine joint support supplements  manufactured, marketed,

distributed and/or sold by Defendant which Defendant warranted as being clinically proven to improve canine joint and hip health  (the "Class Products.")

50.    Excluded from the class are (1) Defendant, any entity or division in which Defendant has a controlling interest, and their legal representatives, officers, directors, assigns and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) the Judge sitting in the presiding state and/or federal court system who may hear an appeal of any judgment entered; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein.  Plaintiff reserves the right to amend the Class definitions if further discovery and further investigation reveal that the Class should be expanded or otherwise modified.

51.    There is a well-defined community of interest in the litigation and the Class is readily ascertainable.

52.    **Numerosity**.  This action is appropriately suited for a class action.  The members of the Class are so numerous that joinder of all members of that class is impracticable.  Plaintiff is informed, believes, and thereon alleges, that the proposed Class contain thousands of purchasers of the Class Products who have been damaged by VetriScience's conduct as alleged herein.  The precise number of the members of the Class is unknown to Plaintiff.

53.    **Existence and Predominance of Common Questions of Law and Fact**. This action involves questions of law and fact common to the Class.  The common legal and factual questions for the Class include, but are not limited to, the following:

    a.  Whether Defendant's conduct, as alleged herein, constitutes a violation of Cal. Bus. & Prof. Code § 17200, *et. seq.*;

    *b.*  Whether Defendant violated California Consumer Legal Remedies Act (Cal. Civil Code §§ 1750, *et seq.*;

    c.  Whether Defendant's labeling, advertising, marketing, and/or selling of the Class Products was and/or is false, fraudulent, deceptive, and/or misleading;

    d.  Whether the products at issue were misbranded as a matter of law;

    e.  Whether representations regarding whether the Class Products were "clinically proven" are material to a reasonable consumer; and

    f.  Whether Class members are entitled to payment of actual, incidental, consequential, exemplary, and/or statutory damages, plus interest thereon and, if so, the nature and scope of such relief.

54. **Typicality**.  Plaintiff's claims are typical of the claims of the members of the Class, because, *inter alia*, all the class members have been injured through the uniform misconduct described above and were subject to VetriScience's blatant misrepresentations of material information.  Moreover, Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

55. **Adequacy of Representation**.  Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff purchased a Class Product, and she was harmed by VetriScience's deceptive misrepresentations.  Plaintiff has therefore suffered an injury in fact as a result of VetriScience's conduct, as did all members of the Class who purchased Class Products.  Plaintiff has retained counsel who are adept, sophisticated, and experienced in the field of class action litigation, and have adequate resources to fully and zealously advocate on behalf of the Class.  Plaintiff has no adverse or antagonistic interests to those of the Class.

56. **Superiority**.  A class action is superior to other methods for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual class members is relatively small compared to the burden and

expense that would be entailed by individual litigation of their claims against VetriScience. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the members of the Class could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

57.    Plaintiff seeks monetary damages, including statutory damages on behalf of herself and the Class. Unless the Class is certified, VetriScience will be allowed to profit from its deceptive practices, while Plaintiff and the Class members will have suffered damages.

58.    Plaintiff and members of the Class are entitled to equitable relief to the extent that no adequate remedy at law exists.

## COUNT I
**Violation of the Consumer Legal Remedies Act ("CLRA")**
**Cal. Civ. Code § 1750, *et. seq.***

59.    Plaintiff realleges and incorporates by reference the allegations in the paragraphs above as if fully set forth herein.

60.    Defendant's actions, representations, and conduct have violated, and continue to violate, the CLRA because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

61.    At all relevant times, Plaintiff was a "consumer" as defined by Cal. Civ. Code § 1761(d).

62.    At all relevant times, the Products were "goods" as defined by Cal. Civ. Code § 1761(a).

63.    At all relevant times, Defendant was a "person" as defined by Cal. Civ. Code § 1761(c).

64.    Cal. Civ. Code § 1770(a) prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer[.]"

65.    Defendant violated and continues to violate the CLRA by engaging in the following deceptive practices proscribed by Cal. Civ. Code § 1770(a) in connection with the transactions intended to result in, and that did result in, the sale of the Class Product at issue herein to Plaintiff and members of the Class in violation of, *inter alia*, the following provisions:

    i.    Representing the goods and services have characteristics, uses, or benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

    ii.    Representing the goods and services are of a particular standard, quality, or grade if they are of another (Cal. Civ. Code § 1770(a)(7)); and

    iii.    Advertising goods and services with the intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9)).

66.    Plaintiff and members of the Class are reasonable consumers who expected the Products to have the characteristics as represented and/or would have considered the omitted facts detailed herein material to their purchase decision.

67.    The representations regarding the Products were material to Plaintiff and members of the Class.  Defendant intended that Plaintiff and Class members would rely on these representations and they did, in fact, rely on the representations.

68.    As a result of Defendant's conduct and unfair or deceptive acts or practices, Plaintiff and the Class suffered actual damages in that the Products are not

as advertised and are not worth the amount paid, and Defendant has deprived Plaintiff and the Class of the benefit of their bargain.

69.    Plaintiff and those similarly situated have no adequate remedy at law to stop Defendant's continuing unlawful, false, and/or deceptive practices.

70.    Pursuant to Cal. Civ. Code § 1782, Plaintiff notified Defendant in writing by certified mail served in conjunction with this Complaint of its violations of § 1770 described herein and demanded that it correct the problems associated with the actions detailed herein and give notice to all affected consumers of Defendant's intent to do so.  If Defendant does not agree to rectify the problems identified and give notice to all affected consumers within 30 days of the date of written notice, Plaintiff will amend this Complaint to seek actual, punitive and statutory damages, as appropriate.

## COUNT II

**Violation of the False Advertising Law ("FAL")**
**Cal. Bus. & Prof. Code § 17500, *et seq.***

71.    Plaintiff realleges and incorporates by reference the allegations in the paragraphs above as if fully set forth herein.

72.    Defendant made untrue, false, deceptive, and/or misleading statements in connection with the advertising and marketing of the Class Product.

73.    Defendant made representations and statements (by omission and commission) that led reasonable consumers to believe that the Class Products they were purchasing were clinically proven to improve canine joint and hip health, when in fact the Class Products are not clinically proven to improve canine joint and hip health.

74.    Defendant knew or should have known, through the exercise of reasonable care, that its representations were false and misleading and likely to deceive consumers and cause them to purchase Defendant's products.

75.    Plaintiff and the Class members relied to their detriment upon Defendant's false, misleading, and deceptive advertising and marketing practices. Had Plaintiff and the members of the Class been adequately informed and not intentionally deceived by Defendant, they would have refrained from purchasing the Class Products or paid less for them.

76.    Defendant's acts and omissions are likely to deceive the general public.

77.    Defendant engaged in these false, misleading, and deceptive advertising practices to increase its profits.  Accordingly, Defendant has engaged in false advertising, as defined and prohibited by Section 17500, *et seq*. of the California Business and Professions Code.

78.    As a direct and proximate result of such actions, Plaintiff and the Class are entitled to full restitution of all monies acquired by Defendant as a result of its false, misleading, and deceptive advertising practices.

79.    Plaintiff seeks, on behalf of herself and those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendant to Plaintiff, the general public, or those similarly situated by means of the false, misleading, and deceptive advertising and marketing practices complained of herein, plus interest thereon.  Plaintiff and the Class may be unable to obtain monetary and/or injunctive relief directly under other causes of action and will lack an adequate remedy at law, if the Court requires them to show class wide reliance and materiality beyond the objective reasonable consumer standard applied under the FAL, because Plaintiff may not be able to establish each Class member's individualized understanding of Defendant's misleading representations as described in this Complaint, but the FAL does not require individualized proof of deception or injury by absent Class members.  In addition, Plaintiff and the Class may be unable to obtain such relief under other causes of action and will lack an adequate remedy at law.

80.     As a result, Plaintiff, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

81.     Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff, on behalf of herself and the Class, seek an order enjoining Defendant from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

## COUNT III

**Violation of the Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200, *et seq.***

82.     Plaintiff realleges and incorporates by reference the allegations in the paragraphs above as if fully set forth herein.

83.     California's Unfair Competition Law ("UCL") defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.  Cal. Bus. & Prof. Code § 17200.

84.     Defendant has engaged, and continues to engage, in unlawful, unfair, and fraudulent trade practices in California by engaging in the unlawful, unfair, and fraudulent business practices outlined in this Complaint.

85.     A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.  The acts and practices of Defendant are unlawful business acts and practices by virtue of its violations of Cal. Civ. Code § 1750, *et seq.* and Cal. Bus. & Prof. Code §§ 17500, *et seq.*

86.     In particular, Defendant has engaged, and continues to engage, in unlawful, unfair, and fraudulent practices by, without limitation, misrepresenting that

the Class Product is clinically proven to improve canine hip and joint health, when in fact it is not clinically proven to improve canine joint and hip health.

87.    Plaintiff and other Class members are reasonable consumers who expect manufacturers, like Defendant, to provide accurate and truthful representations regarding the health benefits of their products. Reasonable consumers, like Plaintiff, rely on those representations in determining whether to purchase a particular product and consider that information important to their purchase decision.

88.    Plaintiff and the other Class members had no way of reasonably knowing that the Product's clinically proven representations were false. Thus, they could not reasonably have avoided the injury each of them suffered.

89.    Plaintiff and those similarly situated relied to their detriment on Defendant's unlawful, unfair, and fraudulent business practices. Had Plaintiff and those similarly situated been adequately informed and not deceived by Defendant, they would have acted differently by, without limitation: (i) declining to purchase the Class Products; (ii) purchasing less of the Class Products; or (iii) paying less for the Class Products.

90.    Defendant's acts and omissions are likely to deceive reasonable consumers and the general public.

91.    Defendant engaged in these deceptive and unlawful practices to increase its profits. Accordingly, Defendant has engaged in unlawful practices, as defined and prohibited by section 17200, *et seq.* of the California Business and Professions Code.

92.    The aforementioned practices, which Defendant has used to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

93.    Defendant's conduct is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

94.   As a direct and proximate result of such actions, Plaintiff and the other Class members have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.  Among other things, Plaintiff and the Class members lost the amount they paid for the Class Products.

95.   As a direct and proximate result of such actions, Defendant has enjoyed, and continues to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

96.   Defendant's conduct in falsely labeling the Class Products has no utility and financially harms consumers.  Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of harm to consumers.

97.   Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily. Plaintiff and the Class lack an adequate remedy at law to obtain relief with respect to their claims under the "unlawful" prong of the UCL.  The "unlawful" prong of the UCL makes the violation of a statute or regulation actionable.  Defendant's acts, omissions, misrepresentations, practices, and/or non-disclosures concerning the Class Products herein constitute "unlawful" business acts and practices in that they violate at least (a) California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 109875 *et seq.* ("Sherman Law"), including, but not limited to, (i) Section 110100 (adopting all FDA regulations as state regulations); (ii) Section 110390 ("It is unlawful for any person to disseminate any false advertisement of any food. . . .  An advertisement is false if it is false or misleading in any particular."); (iii) Section 110395 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food . . . that is falsely advertised"); Section 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded"); Section 110400 ("It is unlawful for any person to receive in commerce any food . . .

that is falsely advertised or to deliver or proffer for delivery any such food . . . ."); and Section 110660 ("Any food is misbranded if its labeling is false or misleading in any particular");  (b) the False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq*.; and (c) the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

98.    None of Plaintiff's damages claims provide a remedy for the harm caused by violation of a statute or regulation itself, whereas the UCL provides a remedy through its "unlawful" prong.  Plaintiff's causes of action provide remedies for harm caused by the deception of consumers, which is a different type of harm from the harm Plaintiff and Class members sustained as result of the unlawful labeling. Therefore, even if the CLRA and Plaintiff's other fraud-based claims provide a remedy for harm that would also be subject to the fraud prong of the UCL, those causes of action do not provide a remedy for the harm sustained under the "unlawful" prong of the UCL.  Plaintiff, therefore, does not have a legal remedy for her "unlawful" prong claim.

99.    Plaintiff seeks, on behalf of herself and those similarly situated, equitable relief, including the restitution for the premium and/or full price that she or others paid to Defendant as a result of Defendant's conduct.  Plaintiff and the Class lack an adequate remedy at law to obtain such relief with respect to their "unlawfulness" claims in this UCL cause of action, so Plaintiff and the Class must allege those violations as predicate acts under the UCL to obtain relief.

100.    Plaintiff also seeks equitable relief, including restitution, with respect to her UCL "fraudulent" prong claims.  Plaintiff and the Class may be unable to obtain monetary or declaratory relief directly under other causes of action and will lack an adequate remedy of law, if the Court requires them to show class-wide reliance and materiality beyond the objective reasonable consumer standard applied under the UCL, because Plaintiff may not be able to establish each Class member's individualized understanding of Defendant's misleading representations as described in this Complaint, but the UCL does not require individualized proof of deception or

injury by absent class members.  In addition, Plaintiff and the Class may be unable to obtain such relief under other causes of action and will lack an adequate remedy at law.

101.    Plaintiff seeks, on behalf of herself and those similarly situated, an order enjoining Defendant from continuing to engage in the above-described trade practices that are fraudulent and/or unlawful.

## **RELIEF REQUESTED**

**WHEREFORE**, Plaintiff, on behalf of herself and all others similarly situated, respectfully requests that the Court enter judgment against Defendant as follows:

A.    An order certifying this action as a class action as soon as practicable, with the Class as defined above, designating Plaintiff as the named Class representative, and designating the undersigned as Class Counsel.

B.    An award to Plaintiff and Class members for monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiff and Class members, consistent with permissible law;

C.    An order enjoining Defendant from further misrepresentations or material omissions in its marketing, advertising, packages, packaging, labels and labeling for the Products;

D.    An award of punitive damages, statutory penalties, and/or monetary fines, as allowed by law;

E.    An award of restitution, as allowed by law;

F.    An award of attorney's fees and costs, as allowed by law;

G.    An award of pre-judgment and post-judgment interest, as provided by law;

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

1    H.    Leave to amend the complaint to conform to the evidence produced at

2    trial; and

3    I.    Such other and further relief as this Court deems just and proper.

4

5

6    **<u>DEMAND FOR JURY TRIAL</u>**

7

8    Plaintiff hereby demands a trial by jury on all causes of action or issues so triable.

9

10    Respectfully submitted,

11    DATED:  April 4, 2025    **DENLEA & CARTON LLP**

12

13    By: */s/ Catherine H. Friesen*
          Catherine H. Friesen (*pro hac vice*)

14    James R. Denlea (*pro hac vice pending*)
      *jdenlea@denleacarton.com*
15    Jeffrey I. Carton (*pro hac vice pending*)
      *jcarton@denleacarton.com*
16    Catherine H. Friesen (*pro hac vice
      pending*)
17    *cfriesen@denleacarton.com*
      Amber T. Wallace (*pro hac vice
18    pending*)
      *awallace@denleacarton.com*
19    2 Westchester Park Drive, Suite 410
      White Plains, New York 10604
20    Tel.:   (914) 331-0100
      Fax:    (914) 331-0105
21
      **KUZYK LAW, LLP**
22    Michael D. Braun (SBN 167416)
      *mdb@kuzykclassactions.com*
23    1999 Avenue of the Stars, Suite 1100
      Los Angeles, California 90067
24    Tel.:   (213) 401-4100
      Fax:    (213) 401-0311
25

26

27

28

## Exhibit 1: The GlycoFlex® Products

| Name | First Five Listed Active Ingredients | Flavors/Quantities |
|---|---|---|
| GlycoFlex Plus/ Ultimate Strength Healthy Hip & Joint | 1,000 mg of Glucosamine HCI (Shrimp and Crab)<br>1000 mg of Methylsulfonylmethane (MSM)<br>600 mg of *Perna canaliculus* (GlycOmega™ brand Green-Lipped Mussel)<br>400 mg of Chondroitin Sulfate (Porcine)<br>100 mg of N,N-Dimethylglycine HCI (DMG) | Chewable Tablets – 120 Count<br><br>Peanut Butter, Duck, Bacon Flavored Chews 45, 60 & 120 count |
| GlycoFlex 3/ Extra Strength Healthy Hip and Joint | 1,000 mg of Glucosamine HCI (Shrimp & Crab)<br>1000 mg of Methylsulfonylmethane (MSM)<br>600 mg of *Perna canaliculus* (GlycOmega™ brand Green-Lipped Mussel)<br>100 mg of N,N-Dimethylglycine HCI (DMG)<br>50 IU of di-alpha Tocopheryl Acetate | Chewable Tablets – 120 Count<br><br>Chicken Flavored Chews – 60 Count/120 count |
| GlycoFlex 2/ GlycoFlex Sport/ Healthy Hip and Joint | 750 mg of Glucosamine HCI (Shrimp and Crab)<br>600 mg of *Perna canaliculus* (GlycOmega™ brand Green-Lipped Mussel)<br>500 mg of Methylsulfonylmethane (MSM)<br>100 mg of N,N-Dimethylglycine HCI (DMG)<br>10 mg of Manganese | Chewable Tablets – 120 Count<br><br>Chicken Flavored Chews – 60 Count/120 Count |
| GlycoFlex 1/ GlycoFlex Everyday | 600 mg of *Perna canaliculus* (GlycOmega™ brand Green-Lipped Mussel)<br>500 mg of Glucosamine HCI (Shrimp and Crab)<br>100 mg of N,N-Dimethylglycine HCI (DMG) | 60 Chews |
| Small Dog GlycoFlex Plus/ Ultimate Strength Healthy Hip and Joint for Small Dogs | 250 mg of Glucosamine HCI (Shrimp and Crab)<br>250 mg of Methylsulfonylmethane<br>200 mg of *Perna canaliculus* (GlycOmega™ brand Green-Lipped Mussel)<br>100 mg of Chondroitin Sulfate (Porcine)<br>50 mg of N,N-Dimethylglycine HCI (DMG) | Duck Flavored Chews – 60 Count |
| Small Dog GlycoFlex 3/ Extra Strength Hip & Joint for Small Dogs | 300 mg of *Perna canaliculus* (GlycOmega™ brand Green-Lipped Mussel)<br>250 mg of Glucosamine HCI (Shrimp and Crab)<br>250 mg of Methylsulfonylmethane (MSM)<br>50 mg of N,N-Dimethylglycine HCI (DMG)<br>25 IUs50 IU of di-alpha Tocopheryl Acetate | Chicken Flavored Chews – 60 count |

1  **DENLEA & CARTON LLP**
2  James R. Denlea *(pro hac vice pending)*
   jdenlea@denleacarton.com
3  Jeffrey I. Carton *(pro hac vice pending)*
   jcarton@denleacarton.com
4  Catherine H. Friesen *(pro hac vice pending)*
5  cfriesen@denleacarton.com
   Amber T. Wallace (*pro hac vice pending*)
6  awallace@denleacarton.com
7  2 Westchester Park Drive, Suite 410
   White Plains, New York 10604
8  Tel.: (914) 331-0100
9  Fax: (914) 331-0105

10
11 Michael D. Braun (167416)
   KUZYK LAW, LLP
12 2121 Avenue of the Stars, Suite 800
   Los Angeles, CA 90067
13 Tel:  213-401-4100
   Fax:  213-401-0311
14 E-mail:  mdb@kuzykclassactions.com

15 *Counsel for Plaintiff*

16

17

18             **UNITED STATES DISTRICT COURT**
               **CENTRAL DISTRICT OF CALIFORNIA**
19

20 SIMONE GEORGES, on behalf of        CASE NO.
   herself and all others similarly situated,
21
                                       CLASS ACTION
22             Plaintiff,
                                       **CLRA VENUE DECLARATION**
23
       v.
24
25 FOODSCIENCE LLC D/B/A
   VETRISCIENCE LABORATORIES,
26
             Defendant.
27
28

---

Docusign Envelope ID: A16F4E49-B49D-4298-A14E-F546477D4734

I, Simone Georges, declare as follows:

1.    I am the Plaintiff in this matter and an individual over eighteen years of age. I make this declaration as required by California Civil Code § 1780(d).

2.    The Complaint in this action is filed in a proper place because a substantial portion of the events alleged in the Complaint occurred in this district.  I reside in Los Angeles County, California.  I purchased the product at issue in this litigation known as *GlycoFlex 3* from Amazon.com and the product was shipped to my home address.

3.    As such, it is my understanding that the Defendant does business in this county and district.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 3rd day of April, 2025, Encino, California.



Simone Georges